William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| BLUEWATER NETWORK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-00841-GK |
| ) | |
| DIRK KEMPTHORNE, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | **MOTION TO INTERVENE** |
| ) | |
| PERSONAL WATERCRAFT INDUSTRY ) | |
|     ASSOCIATION ) | |
|     444 North Capitol Street, NW, Suite 645 ) | |
|     Washington, D.C.  20001 ) | |
| ) | |
| AMERICAN WATERCRAFT ASSOCIATION ) | |
|     45915 Maris Road, Suite 124 ) | |
|     Sterling, VA  20166 ) | |
| ) | |
| CARMEN PERRY, an individual, ) | |
|     Perry's Yamaha Center ) | |
|     2010 Telephone Road ) | |
|     Pascagoula, MS  39567-3350 ) | |
| ) | |
| RICHARD CHENOWETH, an individual, ) | |
|     P.O. Box 2158 ) | |
|     Pascagoula, MS  39569-2158 ) | |
| ) | |

MICHAEL SODER, an individual,    )
    Fish and Hunt Shop             )
    W17148 Main Street       )
    Curtis, MI  49820          )
                              )
WILLIAM MANSON, an individual,  )
    4336 Plainfield Avenue    )
    Suite F                  )
    Grand Rapids, MI  49525   )
                              )
         Applicant Defendant Intervenors.  )
_____)

### MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, the Personal Watercraft Industry Association, American Watercraft Association and individuals Carmen Perry, Richard Chenoweth, Michael Soder, and William Manson (collectively "Applicant Defendant Intervenors"), by and through counsel, hereby move to intervene on the side of Secretary of the Interior Dirk Kempthorne and National Park Service Director Mary Bomar ("Federal Defendants"). Plaintiffs seek to invalidate National Park Service regulations promulgated in 2005 and 2006 providing for regulated, limited personal watercraft ("PWC") use in waters of the Gulf Islands National Seashore and Pictured Rocks National Lakeshore.[1]  The Applicant Defendant Intervenors should be permitted to intervene in this action as associations and individuals with direct and substantial organizational, financial, and personal interests in maintaining existing authorized PWC use in these two park units.  These parties are not adequately represented by the current parties and meet all of the criteria for intervention as a matter of right or, alternatively, should be granted permissive intervention.

Pursuant to L.Cv.R. 7.1(m), undersigned counsel conferred with parties' counsel with respect to whether they consent to granting the requested relief.  Plaintiffs' counsel advised that

---

[1]  70 Fed. Reg. 61893 *et seq.*, Oct. 27, 2005, 36 C.F.R. 7.32; 71 Fed. Reg. 2632 *et seq.*, May 4, 2006, 36 C.F.R. 7.12.

they could not take a position until the motion was filed.  Federal Defendants' counsel takes no position.

The Applicant Defendant Intervenors respectfully direct the Court to the accompanying Memorandum of Points and Authorities In Support of Its Motion to Intervene.

DATED:  July 18, 2008

Respectfully submitted,

 /s/ William P. Horn
William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
1155 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant
Intervenors Personal Watercraft Industry
Association, American Watercraft
Association, Carmen Perry, Richard
Chenoweth, Michael Soder and
William Manson*

3

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-00841-GK |
| | ) |
| DIRK KEMPTHORNE, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) **MEMORANDUM OF POINTS** |
| | ) **AND AUTHORITIES IN** |
| PERSONAL WATERCRAFT INDUSTRY | ) **SUPPORT OF MOTION TO** |
| ASSOCIATION | ) **INTERVENE** |
| 444 North Capitol Street, NW, Suite 645 | ) |
| Washington, D.C.  20001 | ) |
| | ) |
| AMERICAN WATERCRAFT ASSOCIATION | ) |
| 45915 Maries Road, Suite 124 | ) |
| Sterling, VA  20166 | ) |
| | ) |
| CARMEN PERRY, an individual, | ) |
| Perry's Yamaha Center | ) |
| 2010 Telephone Road | ) |
| Pascagoula, MS  39567-3350 | ) |
| | ) |
| RICHARD CHENOWETH, an individual, | ) |
| P.O. Box 2158 | ) |
| Pascagoula, MS  39569-2158 | ) |
| | ) |

MICHAEL SODER, an individual,        )
    Fish and Hunt Shop                  )
    W17148 Main Street               )
    Curtis, MI  49820                 )
                                             )

WILLIAM MANSON, an individual,    )
    4336 Plainfield Avenue             )
    Suite F                          )
    Grand Rapids, MI  49525         )
                                           )

             Applicant Defendant Intervenors.   )
_____)

## <u>TABLE OF CONTENTS</u>

I.  SUMMARY OF FACTS AND PROCEDURAL HISTORY .............................................1

    A.  Applicant Intervenors ...............................................................................................1

        1.  Personal Watercraft Industry Association ...................................................1
        2.  American Watercraft Association ................................................................2
        3.  Carmen Perry .............................................................................................3
        4.  Richard Chenoweth .....................................................................................4
        5.  Michael Soder .............................................................................................4
        6.  William Manson ..........................................................................................5

    B.  Personal Watercraft ...................................................................................................6

    C.  Gulf Islands National Seashore And Pictured Rocks National Lakeshore ..............7

        1.  Gulf Island National Seashore ...................................................................7
        2.  Pictured Rocks National Lakeshore ...........................................................8

    D.  Prior Litigation .........................................................................................................9

II.  ARGUMENT ......................................................................................................................11

    A.  Intervention As Of Right Under Fed.R.Civ.P. 24(A) ............................................12

        1.  Applicant Intervenors Have Article III Standing .......................................12
        2.  Applicant Intervenors Have Substantial Interests in this Case ..................15
        3.  Disposition of this Proceeding May as a Practical Matter, Impair
            or Impede Applicant Intervenors' Ability to Protect Their Interests .........17
        4.  Applicant Intervenors' Motion is Timely ..................................................17
        5.  The Existing Parties Do Not Adequately Represent the
            Intervenors' Interests .................................................................................18

    B.  Intervenors Also Satisfy Rule 24(B) Permissive Intervention Criteria .................20

III.  CONCLUSION ...................................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*American Train Dispatchers v. I.C.C.*
26 F.3d 1157 (D.C. Cir. 1994) ..................................................................................17, 21

*Association of Data Processing Service Organizations v. Camp*
397 U.S. 150 (1970) ....................................................................................................14, 15

*Bluewater Network v. Stanton*
No. 00-2093 (GK) (D.D.C.) .................................................................................................8

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*
386 U.S. 129 (1967) ..........................................................................................................16

*County of San Miguel, Colorado v. MacDonald*
244 F.R.D. 36 (D.D.C. 2007) .......................................................................................13, 14

*Dimond v. District of Columbia*
792 F.2d 179 (D.C. Cir. 1986) ...................................................................................12, 16, 19

*Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*
528 U.S. 167 (2000) ..........................................................................................................13

*Forest Conservation Council v. U.S. Forest Service*
66 F.3d 1489 (9th Cir. 1995) ............................................................................................20

*In Re Sierra Club*
945 F.2d 776 (4th Cir. 1991) ............................................................................................19

*Jones v. Prince George's County, Maryland*
348 F.3d 104 (D.C. Cir. 2003) ...........................................................................................16

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ..........................................................................................................17

*Mausolf v. Babbitt*
85 F.3d 1295 (8th Cir. 1996) ............................................................................................19

*Meek v. Metro. Dade County*
985 F.2d 1471 (11th Cir. 1993) ........................................................................................19

*Military Toxics Project v. EPA*
146 F.3d 948 (D.C. Cir. 1998) .....................................................................................12, 13

*Mille Lacs Band of Chippewa Indians v. State of Minnesota*
989 F.2d 994 (8th Cir. 1993) ...........................................................19

*NAACP v. New York*
413 U.S. 345 (1973)...........................................................................18

*National Resources Defense Council v. U.S. E.P.A.*
99 F.R.D. 607 (D.D.C. 1983)) ..........................................................10

*National Wildlife Federation v. Hodel*
661 F.Supp. 473 (E.D. Ky. 1987) .....................................................19

*NRDC v. Costle*
561 F.2d 904 (D.C. Cir. 1977).............................................17, 18, 19

*Nuesse v. Camp*
385 F.2d 694 (D.C. Cir. 1967)......................................................12, 16

*Sierra Club v. EPA*
292 F.3d 895 (D.C. Cir. 2002)...........................................................13

*Sierra Club v. Mainella*
459 F.Supp. 2d 76 (D.D.C. 2006).....................................................15

*Trbovich v. United Mine Workers*
404 U.S. 528 (1972)...........................................................................18

## Statutes

5 U.S.C. § 706.......................................................................................10

16 U.S.C. § 1..........................................................................................8

16 U.S.C. § 459h.....................................................................................7

16 U.S.C. § 460s......................................................................................8

42 U.S.C. § 4321 *et seq.*........................................................................9

## Regulations

61 Fed. Reg. 52087, Oct. 4, 1996, 40 C.F.R. Parts 89, 90, 91 ...............6

70 Fed. Reg. 61893 *et seq.* (Oct. 27, 2005) (codified at 36 C.F.R. 7.32) ..................1, 10

G:/101545/2/00003640.DOC

70 Fed. Reg. 61895 .................................................................................................8

70 Fed. Reg. 61900 .................................................................................................9

70 Fed. Reg. 61902 (Oct. 27, 2005).........................................................................6

71 Fed. Reg. 26232 *et seq.* (May 4, 2006) (codified at 36 C.F.R 7.12)
("2005 Final Rules"; "2006 Final Rules")...................................................1, 7, 8, 10

## Court Rules

Fed.R.Civ.P. 24(a) .............................................................................................12, 21

Fed.R.Civ.P. 24(b) .............................................................................................20, 21

## Other Authorities

Memorandum-Order in Case No. 00-2093 (GK) (April 11, 2001)
("2001 Intervention Order") .............................................................................9, 10, 11

3B Moore's Federal Practice, ¶ 24.07[4] at 24-28 (2d ed. 1995) ..............................20

CA Regulatory Action #99-1022-05S, Oct. 22, 1999........................................6

International Counsel of Marine Industry Associations PWC Sound
Level Test Report, Sept. 2003...............................................................................7

iv

Pursuant to Federal Rule of Civil Procedure 24 and the Local Rules of this Court, the Personal Watercraft Industry Association ("PWIA"), American Watercraft Association ("AWA") and individuals who use, sell, service, or rent personal watercraft, Carmen Perry, Richard Chenoweth, Michael Soder, and William Manson (collectively "Applicant Intervenors") by and through counsel, hereby move to intervene on the side of Secretary of the Interior Dirk Kempthorne and National Park Service Director Mary Bomar (collectively "Federal Defendants") for purposes of defending against the claims asserted by Plaintiffs Bluewater Network, et al. ("Plaintiffs").  Plaintiffs seek to prohibit existing regulated, limited personal watercraft ("PWC") use in the Gulf Islands National Seashore and the Pictured Rocks National Lakeshore by overturning recently promulgated National Park Service ("NPS") regulations.[1]  If Plaintiffs succeed, the Applicant Intervenors will suffer tangible, specific, particularized harm to their financial, organizational, and personal interests.

## I.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A.    Applicant Intervenors

#### 1.    Personal Watercraft Industry Association

PWIA is an association of PWC manufacturers established in 1987 as an affiliate of the National Marine Manufacturers Association.  PWIA's member companies are BRP U.S. ("Sea Doo"), American Honda Motor Co. Inc., Kawasaki Motors Corp., U.S.A., and Yamaha Motor Corporation, U.S.A.  These member companies manufacture and sell PWCs for retail and wholesale sales and manufacturer and sell parts for PWC service.

PWIA's purposes include bringing together PWC manufacturers to promote safe and responsible operation of PWCs and work with federal, state, and local agencies which have

---

[1]  70 Fed. Reg. 61893 *et seq.* (Oct. 27, 2005) (codified at 36 C.F.R. 7.32); 71 Fed. Reg. 26232 *et seq.* (May 4, 2006) (codified at 36 C.F.R. 7.12) ("2005 Final Rules"; "2006 Final Rules").

regulatory responsibilities for recreational boating.  PWIA also wants to maintain and enhance

continued access to public waters, including appropriate units of the National Park System, for

PWC use.  Ex. 1.

PWIA members rely on sales of their products to users of the National Park System,

including the Gulf Islands and Pictured Rocks units, and retail dealers proximate to those two

units.  *See* Exhibits 1, 5 and 7).  PWIA also participated in the rulemaking for both units filing

extensive, substantive comments.  Ex. 1.

Plaintiffs here seek to set aside the NPS National Environmental Policy Act ("NEPA")

documentation and the 2005 and 2006 Final Rules authorizing regulated, limited PWC use

within the Gulf Islands Seashore and Pictured Rocks Lakeshore.  Plaintiffs ultimately support a

rule that prohibits any and all recreational PWC use in these two public units.  Prohibitions on

PWC access to the Seashore and Lakeshore will eliminate recreational enjoyment of the units via

authorized PWC use, decrease PWC opportunities, and reduce PWC sales, service, rentals, and

the need for parts.  *Id.* 1.  In addition, any such permanent elimination of access will cause

potential individual purchasers not to purchase PWCs due to decreased opportunities to enjoy

them.  *Id.* 1.  A prohibition would also decrease usage of existing PWCs and parts.  *Id.* 1.

Accordingly, the relief sought by Plaintiffs would adversely impact PWIA members.

### 2.    American Watercraft Association

AWA is a national association of PWC users and enthusiasts established in 2004 to

provide a strong voice on national issues, including access, for the thousands of individuals

across the United States who enjoy recreational use of PWC.  It is incorporated in the District of

Columbia.  Ex. 3.

2

AWA's purposes are to educate PWC users regarding safe and responsible riding, fostering the growth of the sport of PWC riding, and ensure access to public waters, including waters within units of the National Park System, for PWC recreational users. *Id.*

AWA members regularly use PWC in the waters of the Gulf Islands National Seashore and the Pictured Rocks National Lakeshore and intend to do so in the future. *Id.* Any ban on or reduction in the use of PWC in public waters, including the waters at issue and affected by this lawsuit, adversely impacts AWA and its members. To protect these interests, AWA participated in the NPS rulemaking that led to the reopening of the Gulf Islands and Pictured Rocks units to regulated PWC use. *Id.*

AWA and its members will suffer reduced opportunities to participate in PWC riding and be adversely impacted if Plaintiffs prevail in this case and PWC are banned from the public waters of these two units.

### 3.    Carmen Perry

Carmen Perry is the co-owner of Perry's Yamaha Center in Pascagoula, MS. It sells and services PWC – particularly Yamaha models – many of which are used in the waters of the Gulf Islands National Seashore. Two major islands in the Seashore – Petit Bois and Horn Islands – are immediately offshore from Pascagoula. Ms. Perry's business has sold and serviced such PWC since 1987. Ex. 5.

Their sales and services of PWC fell approximately 50 percent in the period that followed the 2002 ban on PWC within Seashore waters. Sales and services began to rebound after the Seashore was reopened in 2006 but have not yet returned to the levels that preceded the ban, probably because Pascagoula and Ms. Perry's business also suffered the devastating consequences of Hurricane Katrina in 2005. *Id.*

Because of her intense personal and financial interests in maintaining PWC access to waters of the Gulf Islands National Seashore, Ms. Perry attended and participated in NPS meetings and workshops leading up to the 2006 rulemaking re-opening portions of the Seashore waters to PWC. At those sessions, Ms. Perry strongly urged NPS to take action to assure PWC access. *Id.*

Any new ban on the use of PWC within the waters of the Gulf Islands would adversely impact Ms. Perry. Decreased opportunities to use PWC including within the waters at issue in this case, negatively impacts her business' sales and services of PWC and a new ban, as sought by Plaintiffs, would likely cause the family business to suffer another devastating loss of sales and services.

### 4.    Richard Chenoweth

Richard Chenoweth of Pascagoula, MS has used waters within the Gulf Islands National Seashore for PWC riding. Since approximately 1989, he and his family have made hundreds of visits via PWC to the Seashore including waters around Petit Bois Island, Horn Island, and Sand Island. His most recent visit was during the 4th of July weekend, 2008. Ex. 6.

He was unable to visit the Seashore via PWC after the ban went into effect in April, 2002, as the ban made PWC use illegal. Mr. Chenoweth was pleased the ban was lifted in May, 2006, recommenced his recreational enjoyment of the Seashore and fully intends to continue such use and enjoyment via PWC in Seashore waters so long as the ban is not reinstated as a result of this litigation. Any new ban on the use of PWC's in the waters of the Seashore, as sought by the Plaintiffs in this case, would adversely impact Mr. Chenoweth and his family. *Id.*

### 5.    Michael Soder

Michael Soder of Curtis, MI owns and operates the Fish and Hunt Shop in that

4

community.  A family owned small business, the Fish and Hunt Shop has operated for 52 years.
Since 1989 it has sold and serviced PWCs (primarily Sea-Doo products) for use in area waters
including those in Lake Superior within the Pictured Rocks National Lakeshore.  The Shop is
located approximately 50 miles from the Seashore.  Before Pictured Rocks was closed to PWC
use in 2002, Mr. Soder also rented PWC that were used by customers in that area.  Ex. 7.

When Pictured Rocks was closed to PWC in April, 2002, Mr. Soder suffered a significant
decline in PWC sales, services, and rentals. The decline compelled him to cease PWC rentals.
*Id.*

Subsequent to the 2005 reopening of Pictured Rocks, his PWC business began to rebound
and he reinstituted PWC rentals.  Approximately half of his PWC customer base is retirees
including a very large percentage of women.  *Id.*

If Pictured Rocks is closed again to PWC use, as sought by Plaintiffs in this action,
Mr. Soder's family business will sustain the same kind of adverse financial impacts, losses and
damages that followed the previous closure.  Decreased opportunities to use PWC within the
Lakeshore waters at issue in this case, will negatively impact his interests.

### 6.    William Manson

William Manson of Grand Rapids, MI has used waters within Pictured Rocks National
Lakeshore for PWC riding in the past and intends to do so again in the future.  In the 1990's he
and his family made three separate visits to the Lakeshore and rode PWC in its waters on each
occasion.  He greatly enjoyed the aesthetic and recreational opportunities provided by authorized
PWC use. Ex. 8.

Mr. Manson was unable to visit the Lakeshore to use PWC after the ban went into effect
in April, 2002, because the ban made such use illegal.  He was pleased the ban was lifted in

October, 2005, and fully intends to and expects to visit the Lakeshore soon to ride PWCs, so long as the ban is not reinstated as a result of this litigation. *Id.*

Any new ban on the use of PWC in the waters of the Lakeshore for recreational enjoyment, as sought by the Plaintiffs in this case, would adversely impact Mr. Manson and his family.

## B.    Personal Watercraft

PWC are a class of small motor boats propelled by water drive engines rather than traditional propellers.    First introduced to the U.S. market in 1979, PWC have been fundamentally transformed in the last decade into substantially cleaner and quieter watercraft. Modern PWC employ 4-stroke or direct injection engines with water muffled exhaust, rather than older 2-stroke technology lacking any muffling.    Consistent with stringent Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") standards (61 Fed. Reg. 52087, Oct. 4, 1996, 40 C.F.R. Parts 89, 90, 91; CA Regulatory Action #99-1022-05S, Oct. 22, 1999) modern PWC emit 90 percent less hydrocarbons than pre-1998 models. Starting in 2003, PWC manufacturers (i.e., PWIA members) have produced only the newer, cleaner 4-stroke or direct injection, non-carbureted 2-stroke models for the U.S. market. Since the typical PWC has an operating life of five years, most PWC in use are the newer, cleaner models and within the next few years virtually all operating PWC will be the newer, cleaner and quieter EPA/CARB consistent models.

The new models are also 70 percent quieter than the predecessor 2-strokes.[2]    Even though previous PWC had minimal effects on other park visitors[3] and wildlife,[4] the new quieter models

---

[2]   International Counsel of Marine Industry Associations PWC Sound Level Test Report, Sept. 2003.
[3]   Only 2.6 percent of visitors to Pictured Rocks, before 2002, identified "noise" on the Lakeshore as a serious or very serious problem.  70 Fed. Reg. at 61902 (Oct. 27, 2005).
[4]   Florida Fish and Wildlife Commission studies and affidavit of James Rodgers, Ph.D. in wildlife biology, April 4,

6

have even less effect.

In addition, early models two decades ago were primarily one-person craft. Today approximately 99 percent of PWC are multi-person craft (capable of carrying 2 or 3 passengers) capable of operating safely at low speeds.

PWC represent a small portion of overall power boat use in the U.S. National Marine Manufacturers Association data from 2006 shows that there are 11.7 million powerboats (i.e., inboards, outboards, sterndrives, and PWCs) in the 50 States and the District of Columbia. Only 1.1 million, or nine percent of these are PWC. In the Gulf Islands National Seashore, PWC use constitutes only one percent of total powerboat use in the Florida portions and four percent in the Mississippi portions. 71 Fed. Reg. 26233, 26236.

### C. Gulf Islands National Seashore And Pictured Rocks National Lakeshore

#### 1. Gulf Islands National Seashore

The Gulf Islands National Seashore encompasses barrier islands and seven historic fort or battery sites along a 160 mile stretch of the Gulf of Mexico coastline off northwestern Florida, Alabama, and Mississippi. Most of the islands are six to 14 miles offshore and accessible only by water. Boat traffic is heavy in and around the islands and the Seashore is proximate to military bases, airports, and high traffic commercial shipping channels. When Congress established the Seashore in 1971, its stated purpose was "to preserve for public use and enjoyment certain areas possessing outstanding natural, historic, and recreational values." 16 U.S.C. § 459h. Like all other National Park units, Gulf Islands is administered pursuant to the 1916 National Park Organic Act which similarly provides that the purpose of NPS is to "promote and regulate the use" of park units and that NPS shall "provide for the enjoyment of the same." 16 U.S.C. § 1.

---

2002 submitted by PWIA to NPS on May 17, 2004.

PWC use within Gulf Islands' waters began in the 1980's and continued until April, 2002, when such use was barred as a result of previous litigation, a 2001 settlement entered by this Court,[5] and agency action.   NPS reopened limited portions of the Seashore to regulated, restricted PWC use in the 2006 rulemaking challenged by Plaintiffs' in this case (71 Fed. Reg. 26232)[6].  Following the NPS rules, PWC users and interests promptly began to use and enjoy the unit via PWC in 2006.   PWC use currently constitutes approximately four percent of total powerboat use in the Mississippi portions of the Seashore and one percent in the Florida portions. *Id.*

### 2.    Pictured Rocks National Lakeshore

The Pictured Rocks National Lakeshore lies along 40 miles of the Lake Superior coastline on Michigan's Upper Peninsula between the communities of Munising and Grand Marais.  Much of the shoreline is rocky with sandstone cliffs and within the Lakeshore are a lighthouse, former Coast Guards stations and old farms. Congress created the Lakeshore in 1966 and directed that it be managed "for the benefit, inspiration, education, recreational use and enjoyment of the public."  16 U.S.C. § 460s.  The Lakeshore is also subject to the "use" and "enjoyment" mandates of the 1916 Organic Act. 16 U.S.C. § 1.

PWC use of the Lakeshore began in the 1990's and continued until the April 2002 closure.  During this period of use, NPS surveys indicated that there were no observations or reports of natural resource impact concerns arising from PWC use.  70 Fed. Reg. 61895. Furthermore, visitor surveys found that over 80 percent of Lakeshore visitors thought that PWC use in Lakeshore waters was "no problem."  *Id.* at 61900.  Limited portions of the Lakeshore were reopened to regulated PWC use in October, 2005, the rules challenged by the Plaintiffs (*Id.*,

---

[5]   *Bluewater Network v. Stanton,* No. 00-2093 (GK) (D.D.C.); *see* Plaintiffs' Complaint, ¶ 1.
[6]   A number of areas are closed to PWC entry and use, there are speed (i.e., flat wake requirements) limitations in a number of areas and there is a general restriction to stay 300 yards offshore.

36 C.F.R. 7.32)[7].

### D.    Prior Litigation

In November, 2000, PWIA and AWA sought to intervene in the then pending case that produced the 2001 Settlement.  *See* Memorandum-Order No. 00-2093 (GK) (D.D.C. April 11, 2001) ("2001 Intervention Order").  This Court denied PWIA's and AWA's motion to intervene. The present case is fundamentally different than the 2000 proceeding and the facts, procedural posture, and relief sought in the present case support intervention by the Applicant Defendant Intervenors.  This case is a challenge to the NPS's *substantive* decisions in 2005 and 2006 to reopen portions of Gulf Islands and Picture Rocks to regulated, limited PWC use *after* conducting National Environmental Policy Act ("NEPA") (42 U.S.C. § 4321 *et seq.*) analysis required by the settlement of the prior case.  Plaintiffs now seek an order setting aside substantive final rules rather than an order that NPS conduct administrative proceedings. Moreover, this motion to intervene is filed before any events in the case have occurred, while the November, 2000 motion to intervene in the prior case was filed months after the Plaintiffs' complaint had been filed and on the eve of entry of a negotiated settlement.

In denying the motion to intervene in the prior case, this Court reviewed the settlement terms and found that NPS and the Plaintiffs had merely agreed to procedural relief that did not jeopardize PWIA's interests.  *See* 2001 Intervention Order at 5.  Specifically, the Court found that the settlement required NPS to conduct NEPA analysis and go through an Administrative Procedure Act ("APA") (5 U.S.C. § 706) rulemaking before making any decision on whether to allow PWC use, but did not attempt to dictate the ultimate substantive decision to be made by NPS regarding whether to allow PWC use in Gulf Islands, Pictured Rocks, and other units.  *Id*.

---

[7]  PWCs may only be launched at one site, may beach at only two specific locations, may operate along only eight miles of the 40 mile shoreline, and  may not operate within 200 feet of the shoreline.

The Court found that PWIA and AWA could fully protect their interests by participating in those administrative proceedings, and that PWIA and AWA therefore lacked sufficient practical interest to justify granting intervention to challenge the settlement:

> "The Government is correct that 'the Agreement embodies nothing more than processes in which the right of the intervenor-applicants to be full participants is fully preserved,' and that therefore, there is no reason for them to object to the settlement." 2001 Intervention Order at 5.

Emphasizing that the settlement of the prior case was a process-only settlement, the Court distinguished precedent that supported intervention where a regulatory decision favoring the Applicant Intevenor was under challenge. "Neither the Complaint nor the Settlement Agreement contemplated setting aside any particular substantive decisions." 2001 Intervention Order at 6, n. 1 (distinguishing *National Resources Defense Council v. U.S. E.P.A.*, 99 F.R.D. 607, 609 (D.D.C. 1983)).

NPS has now completed the NEPA proceedings required by the settlement, and the Plaintiffs and PWIA fully participated in those proceedings. After considering the evidence presented by Plaintiffs and PWIA, NPS released a draft Environmental Assessment ("EA") for the Gulf Islands unit, took comments, and then issued a final EA and final rules reopening the Gulf Islands units to regulated, limited PWC use. 71 Fed. Reg. 26232. For the Pictured Rocks units, NPS followed the same path and reached the same ultimate decision. 70 Fed. Reg. 61893.

Plaintiffs bring this new case to challenge these Final Rules alleging that the decisions to reopen these two units to regulated, limited PWC use should be set aside as "arbitrary and capricious." In doing so, they seek substantive relief setting aside the Final Rules and thereby shutting down existing PWC use. 2008 Complaint Count One, ¶¶ 12, 13 (alleging the Final Rules jeopardize park values and are arbitrary and capricious) and Prayer for Relief at 3 (asking Court to "set aside and remand regulations authorizing Jetski use"). So, this time around, the

10

relief sought is substantive and directly threatens the interests of PWIA, AWA and individual Applicant Intervenors. Further, because in judicial review litigation the district court acts effectively as an appellate court, the present case is a continuation on appeal of the administrative proceedings that the Court, in its 2001 Intervention Order, found sufficient to protect PWIA's procedural interests. 2001 Intervention Order at 5. In order to now fully protect its substantive, interests as intended by the Court, Applicant Intervenors must be allowed to participate in the "appeal" phase now before this Court, and not just the initial administrative or "trial" phase conducted by the agency.

The present motion to intervene is also undisputedly timely compared to the 2000 PWIA filing. Although the Court's 2001 Intervention Order did not find a lack of timeliness, the Court did rely on precedent regarding motions to intervene to challenge settlements. 2001 Intervention Order at 5-6. Under that precedent, motions to intervene to challenge settlement are more difficult to win than motions filed before settlement because the existence of a settlement guarantees that intervention will be disruptive – the very purpose of the intervention is to persuade the Court to reject an agreed-upon resolution. By contrast, in this new case there is no such disruption from intervention, as there is no settlement, and no significant proceedings in the case have occurred.

## II.    ARGUMENT

At issue in Applicant Intervenors' present motion is whether they, as associations and individuals dedicated to the promotion of PWC recreation, PWC access to public waters specifically including Gulf Islands Seashore and Pictured Rocks Lakeshore, and public access to public waters for recreational purposes in general, should be permitted to intervene in this action that directly addresses those same issues. Applicant Intervenors have participated in the relevant

NEPA proceedings and rulemakings (*see* Exs. 1, 3, and 5) and there is little doubt that Applicant Intervenors meet the requirements for intervention as of right and/or should be granted permissive intervention in this lawsuit.

### A.    Intervention As Of Right Under Fed.R.Civ.P. 24(a)

Applicant Intervenors are entitled to intervene as a matter of right.  The Federal Rule of Civil Procedure 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: …
> (2) when the applicant claims an interest relating to the property or transaction
> which is the subject of the action and the applicant is so situated that the
> disposition of the action may, as a practical matter, impair or impede the
> applicant's ability to protect that interest, unless the applicant's interest is
> adequately represented by existing parties.

As a threshold matter, an applicant for intervention as of right must show that it has standing under Article III of the U.S. Constitution to participate in the litigation as a party.  *Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C. Cir. 1998).   There are four additional prerequisites to intervention as of right:  (1) there must be an "adequate interest"; (2) there must be a "possible impairment of that interest"; (3) the application must be timely; and (4) there must be a "lack of adequate representation of that interest by existing parties."  *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986); *see also Nuesse v. Camp*, 385 F.2d 694, 699 (D.C. Cir. 1967).  As shown below, Applicant Intervenors meet all criteria for intervention as of right under Rule 24(a) and, therefore, intervention should be granted.

### 1.    Applicant Intervenors Have Article III Standing

Under D.C. Circuit law, "a party seeking to intervene as of right must demonstrate that it has standing under Article III of the United States Constitution."  *County of San Miguel, Colorado v. MacDonald*, 244 F.R.D. 36, 43 (D.D.C. 2007) (citing *Military Toxics Project*, 146 F.3d at 953).  Applicant Intervenors have standing under Article III to intervene as of right in this

litigation and to pursue their cross-claims against Federal Defendants.[8]

In order to demonstrate standing, a party must show that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). Furthermore, an association has standing to sue on its members' behalves if:

> (I)[A]t least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.

*County of San Miguel*, 244 F.R.D. at 43 (quoting *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)).

Here, PWIA, AWA, and the four individuals clearly have standing. PWIA seeks to protect its members' financial interests in a robust PWC community in and around the Park units and the resulting need of businesses and individuals to purchase more PWC and PWC parts. These interests are precisely the reasons this association exists, therefore these interests are clearly "germane" to PWIA's purposes. Furthermore, there is no reason for individual PWIA members to participate in this litigation as individual companies. Indeed, PWIA fills this role as an advocate for interests shared by its individual members. Therefore, as long as at least one individual member of each of the Applicant Intervenor organizations would have standing, the organization has standing. Here individual members Yamaha Motor Corporation, U.S.A. and BRP US ("Sea Doo" products) clearly have standing due to their presence in the market for PWC used in the relevant units and other PWIA members likely have standing as well. *See* Exs. 5 and

---

[8] As noted below, *see infra* at Part I.B, Applicant Intervenors' demonstration of standing is also sufficient to meet Federal Rule of Civil Procedure 24's requirement of a sufficient "interest" to justify intervention of right.

7 (PWIA members have dealerships near Gulf Islands unit and Pictured Rocks units).

PWIA members clearly have Article III standing and, therefore, as noted above, PWIA has organizational standing. PWIA members are directly and significantly financially impacted by the Final Rules and by the relief Plaintiffs seek. PWC prohibitions in the two Park units mean fewer PWC will be purchased and fewer PWC parts will be needed. This will lead to reduced revenues for PWIA members. Furthermore, if Plaintiffs are successful in obtaining rules prohibiting PWC use in these unites, PWIA's members' injuries will be exacerbated as the demand for PWC and PWC parts in and around these units will be severely diminished. Such economic injury is sufficient to confer standing on PWIA members, and therefore, on PWIA as an association. *Association of Data Processing Service Organizations Inc. v. Camp*, 397 U.S. 150, 154 (1970).

AWA has standing as its individual members that use and intend to use again Gulf Islands and Pictured Rocks waters for PWC recreation will be harmed if such use is barred as a result of Plaintiffs' claims. *See* Ex. 3. Since AWA exists, in part, to protect its members' interests in continued access to the waters of these units (and others), there interests are germane to AWA's purposes. There is of course no reason that individual members of AWA must participate in this litigation as individuals. AWA fills this role as an advocate for the interests shared by its individual members and it may be financially impractical for these members to litigate on their own. Therefore as long as at least one individual member of AWA would have standing, the association has standing. *County of San Miguel*, 244 F.R.D. at 43.

There is no doubt that individual AWA members have standing. Their injuries are actual and imminent and not merely conjectural. If Plaintiffs prevail and existing PWC access to and use of waters within the two units is terminated, these members will lose existing recreational

opportunities they now enjoy.  "Harms to aesthetic and recreational enjoyment of parks are sufficient to support injury for Article III purposes as long as they are supported by a description of particularized injury[.]"  *Sierra Club v. Mainella*, 459 F.Supp. 2d 76, 91 (D.D.C. 2006).

The individual Applicant Intervenors also satisfy these standards.  The two PWC sales/service/rental owners, Ms. Perry and Mr. Soder, will suffer actual, tangible, imminent injuries in fact if Plaintiffs prevail and the two units are closed to existing PWC use.  Prior PWC bans in each unit imposed significant financial injury on each of their businesses (see Exs. 5 and 7).  A new set of PWC closures arising from this litigation will similarly adversely impact their business and financial interests.  As previously noted, it is well settled that financial injuries can satisfy Article III's injury in fact requirement.  *Association of Data Processing Service Organizations, Inc.*, 397 U.S. at 154.

Individual PWC recreational users Mr. Chenoweth and Mr. Manson satisfy these standards too.  Each has recreationally enjoyed authorized PWC use in the units at issue in this case (*see* Exs. 6 and 8).  Each intends to engage in such recreational enjoyment in the future as long as the units remain open under the present NPS rules.  Id.  Their interests in such aesthetic and recreational enjoyment will be impaired if Plaintiffs prevail and succeed in barring such continued enjoyment by these two individuals. That form of injury is sufficient to establish standing in this case.  *Mainella*, 459 F. Supp. 2d at 91.

### 2.    Applicant Intervenors Have Substantial Interests in this Case

Applicant Intervenors similarly have substantial interests in personal watercraft use in the Lakeshore and Seashore, and particularly in the 2005 and 2006 rules which reopened both units to regulated PWC access.  "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and

due process." *Nuesse*, 385 F.2d at 700.   When parties represent private interests properly safeguarded by formal participation in litigation, the United States Supreme Court has broadly interpreted the range of interests sufficient to justify intervention.  *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967) (holding that the interest claimed by the applicant in intervention does not have to be a direct interest in the property or transaction at issue, provided that it is an interest that would be impaired by the outcome).   In the D.C. Circuit, an economic interest dependent upon the outcome of litigation squarely meets the Rule 24(a)(2) test.  *Dimond*, 792 F.2d at 192.   In addition, by establishing Article III standing, Applicant Intervenors also establish the requisite level of interest in this litigation to support intervention as of right.  *Jones v. Prince George's County, Maryland*, 348 F.3d 104, 1018-19 (D.C. Cir. 2003).

The Plaintiffs seek, among other things, a ruling from this Court invalidating and setting aside the 2005 and 2006 rules authorizing regulated PWC access in these units.  If Plaintiffs are successful, Applicant Intervenors' interests in recreational PWC use in these units will be impaired.  Individuals such as Mr. Chenoweth and Mr. Manson who plan to visit these units to ride PWC will be unable to do so.   Other members of AWA would similarly be unable to ride their PWC in these waters.   Thus these individuals and members would lose their ability to engage in aesthetic and recreational enjoyment of the units via PWC.  Applicant Intervenors who sell PWC and/or operate PWC-related business in communities near the units (Ms. Perry and Mr. Soder) will suffer significant financial hardship due to decreases in the number of PWC customers and corresponding loss of revenue.   Decreased PWC use opportunities will in turn adversely impact PWC and PWC parts manufacturers – PWIA members – who will suffer losses of sales.

All  Applicant  Intervenors  have  significant  interests  in  continuing  their  active

participation in matters associated with regulated PWC access to the two park units to ensure that their interests in continued PWC use in and around the units are not adversely impacted.

### 3. Disposition of this Proceeding May as a Practical Matter, Impair or Impede Applicant Intervenors' Ability to Protect Their Interests

Applicant Intervenors represent the regulated recreational PWC users of Gulf Islands and Pictured Rocks Park, sellers of PWCs and PWC parts, and businesses in adjacent communities that rely on continued PWC use for their financial well-being. Therefore, all the Applicant Intervenors directly benefit from continued PWC use in the Lakeshore and Seashore. As such Applicant Intervenors would be adversely affected if the Court sets aside the 2005 and 2006 regulations in favor of the PWC prohibitions Plaintiffs see. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-562 (1992) (holding that when the plaintiff is the object of the governmental regulation, there is "little question that the [government] action or inaction has caused him injury . . . .").

Furthermore, if Plaintiffs prevail, the Court will establish a precedent potentially affecting all PWC access to other NPS units (and possibly other public waters) and certainly affecting all future PWC access at the Lakeshore and Seashore. The potential stare decisis effect of such a judgment, even if persuasive rather than preclusive, also provides sufficient impairment to justify intervention. *American Train Dispatchers v. I.C.C.*, 26 F.3d 1157, 1162 (D.C. Cir. 1994); *NRDC v. Costle*, 561 F.2d 904, 907-08, 910 (D.C. Cir. 1977). Applicant Intervenors should be allowed to intervene to protect their interests which are directly implicated by Plaintiffs' claims here.

### 4. Applicant Intervenors' Motion is Timely

This suit is in the earliest stages and this motion is clearly timely. The timeliness of a request to intervene is submitted to the sound discretion of the Court, and "[t]imeliness is to be

determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). Relevant factors include the age of the case, whether responsive pleadings or dispositive motions have been filed, the purpose for which intervention is sought, and whether intervention will prejudice existing parties. *Id.* at 366-69; *Castle*, 561 F.2d at 904, 907-08.

Plaintiffs filed their Complaint very recently, on May 15, 2008. Federal Defendants have not yet filed an answer to Plaintiffs' Complaint. In addition, the parties have noted appearances, but otherwise nothing has happened. No dispositive motions have been filed or decided.

The short amount of time that has elapsed following initiation of this action, as well as the absence of any consideration of substantive issues, establish the timeliness of the requested intervention. Furthermore, in light of the early stage of proceedings, and Applicant Intervenors' determination to abide by any reasonable schedule set by the Court, no party will suffer prejudice if intervention is granted. Applicant Intervenors' motion to intervene meets the timeliness requirement.

> **5.    The Existing Parties Do Not Adequately Represent the Intervenors' Interests**

The Court should grant the Applicant Intervenors' request for intervention because the Federal Defendants do not adequately represent Applicant Intervenors' interests. An applicant need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n. 10 (1972). When a managing agency:

> [H]as no financial stake in the outcome of the challenge . . . [a private party's] application for intervention thus falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances.

*Dimond*, 792 F.2d at 192. Private parties can often "provide a very helpful supplement to the

defense by the [federal] authority [because] 'there is a likelihood that the [private parties] will make a more vigorous presentation of the economic side of the argument than would the [federal authority].'"  *Costle*, 561 F.2d at 912 and n. 41 (internal quotation omitted).[9]

Third parties are often uniquely situated to raise issues that the Federal government is unable or unwilling to assert.  Even when a third party asserts a general interest that the government is presumed to represent, the necessity that the government will balance competing private interests is sufficient to meet the minimal burden of showing inadequate representation. *Mausolf v. Babbitt*, 85 F.3d 1295, 1303-04 (8th Cir. 1996).

In this case, the Federal Defendants are charged with balancing all interests, including Plaintiffs' and others whose interests are directly adverse to Applicant Intervenors.  While the Federal Defendants likely will defend the 2005 and 2006 PWC rules based on procedural and substantive compliance with the relevant statutes, as governmental entities, they will continue in their regulatory function regardless of the outcome of this lawsuit.  Applicant Intervenors, on the other hand, risk impairment of important recreational activities and park unit and/or severe economic hardship including, in some cases, losing their businesses, if Plaintiffs are successful here.

In addition, Federal Defendants have in the past acted against the interests of Applicant Intervenors by closing these units to PWC use, and have made findings adverse to Applicant Intervenors.  They are in the middle between Plaintiffs and Applicant Intervenors.  Applicant Intervenors not only will present the general interests of the public, they also possess unique concrete economic, contractual, and property interests in the outcome of this litigation and,

---

[9]    Courts have allowed intervention based on, among other things, potential inadequate representation by the governmental entity in numerous other cases. *See, e.g., In Re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991); *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994, 1000-01 (8th Cir. 1993); *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993); *National Wildlife Federation v. Hodel*, 661 F. Supp. 473, 476 (E.D. Ky. 1987).

therefore, will make a more vigorous presentation of the economic aspect of the argument than the Federal Defendants. *See Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("Inadequate representation is most likely to be found when the applicants assert a personal interest that does not belong to the general public") (quoting 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995)).

Moreover, in the absence of intervention, and in light of the Federal Defendants' duty to balance competing values, the Federal Defendants could attempt to dispose of all or portions of Applicant Intervenors' interests in an attempt to negotiate a settlement encompassing the entire litigation. Recall the Federal Defendants are not obligated to represent Applicant Intervenors' interests in defense or settlement of this action. Accordingly, unless Applicant Intervenors are granted intervention, their unique personal and commercial interests that they seek to represent in this case will be lost.

**B.      Intervenors Also Satisfy Rule 24(b) Permissive Intervention Criteria**

If the Court declines intervention as of right, in the alternative Applicant Intervenors also request permissive intervention under Rule 24(b). That Rule provides:

> Upon timely application anyone may be permitted to intervene in an action; . . . (2) when an applicant's claim or defense in the main action have a question of law or fact in common . . . . In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). Permissive intervention requires a substantially lower burden than intervention of right under Rule 24(a)(2).

Permissive intervention is appropriate here. First, as previously discussed, this motion is timely. Second, Applicant Intervenors' interests in the 2005 and 2006 Final Rules and PWC access generally involve questions of law or fact common to the issues to be resolved in this case.

Third, because this case is in the earliest stages and Applicant Intervenors intend to abide by all briefing schedules and deadlines imposed by the Court, intervention will not unduly delay this proceeding or unfairly prejudice the rights of the parties.

On the other hand, Applicant Intervenors' interests would be severely impacted without intervention, which weighs in favor of allowing intervention.  *See generally American Train Dispatchers*, 26 F.3d at 1162.  Accordingly, in the event that intervention as of right is denied, permissive intervention is appropriate and should be granted.

## III.    CONCLUSION

Plaintiffs' lawsuit challenging the 2005 and 2006 rules reopening the Gulf Islands National Seashore and Pictured Rocks National Lakeshore to regulated, limited PWC use severely threatens Applicant Intervenors' recreational, aesthetic, contractual, economic, real property, and governmental interests.  Plaintiffs seek a flat prohibition of recreational PWC use in these two public units.  This would eliminate the mode of access preferred by many visitors to each of these units.  Although the Federal Defendants do not adequately represent, nor are they obligated to represent or defend Applicant Intervenors' interests, which are threatened by Plaintiffs' requested relief, Applicant Intervenors could conceivably suffer the future and possible preclusive effect of this Court's resolution of Plaintiffs' claims, and should be granted intervention to protect their interests.

Accordingly, Applicant Intervenors' intervention as of right is appropriate and necessary to protect their substantial interests at stake in this litigation.  In the alternative, Applicant Intervenors should be granted permissive intervention.

DATED:  July 18, 2008

Respectfully submitted,

 /s/ William P. Horn
William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
1155 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant
Intervenors Personal Watercraft Industry
Association, American Watercraft
Association, Carmen Perry, Richard
Chenoweth, Michael Soder and
William Manson*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 18th day of July, 2008, I filed the foregoing *Motion to Intervene, Memorandum of Points and Authorities in Support of Motion to Intervene, Answer of Applicant Defendant Intervenors, and [Proposed] Order for Intervention.* I further certify that I caused correct copies of the foregoing to be served by placing the same in the U.S. first class mail, postage prepaid, addressed as follows:


Eric R. Glitzenstein
Howard M. Crystal
Meyer, Glitzenstein & Crystal
1601 Connecticut Avenue, NW, Suite 700
Washington, D.C.  20009

Barry Alan Weiner
U.S. Department of Justice
General Litigation Section
Ben Franklin Station
P.O. Box 663
Washington, D.C.  20044-0663

Michael Tiernan
Parks and Wildlife Division
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW, Room 3200
Washington, D.C.  20240


 /s/ William P. Horn_____
William P. Horn

23

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 1

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-00841-GK |
| ) | |
| DIRK KEMPTHORNE, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | **DECLARATION OF** |
| PERSONAL WATERCRAFT INDUSTRY ) | **MAUREEN HEALEY** |
| ASSOCIATION ) | |
| 444 North Capitol Street, NW, Suite 645 ) | |
| Washington, D.C.  20001 ) | |
| ) | |
| AMERICAN WATERCRAFT ASSOCIATION ) | |
| 45915 Maris Road, Suite 124 ) | |
| Sterling, VA  20166 ) | |
| ) | |
| CARMEN PERRY, an individual, ) | |
| Perry's Yamaha Center ) | |
| 2010 Telephone Road ) | |
| Pascagoula, MS  39567-3350 ) | |
| ) | |
| RICHARD CHENOWETH, an individual, ) | |
| P.O. Box 2158 ) | |
| Pascagoula, MS  39569-2158 ) | |
| ) | |

MICHAEL SODER, an individual,                    )
    Fish and Hunt Shop                            )
    W17148 Main Street                           )
    Curtis, MI  49820                            )
                                                 )
WILLIAM MANSON, an individual,                   )
    4336 Plainfield Avenue                       )
    Suite F                                      )
    Grand Rapids, MI  49525                      )
                                                 )
    Applicant Defendant Intervenors.             )
_____)

## DECLARATION OF MAUREEN HEALEY

I, Maureen Healey, am over age 18 and competent to testify.

1.    I submit this Declaration on Behalf of the Personal Watercraft Industry Association ("PWIA").

2.    I have personal knowledge of the statements in this declaration.

3.    I am a resident of Virginia.

4.    I am the Executive Director of the Applicant Intervenor, PWIA.

5.    PWIA is an association of personal watercraft manufacturers established in 1987 as an affiliate of the National Marine Manufacturers Association.  PWIA's member companies are BRP U.S. ("Sea Doo"), American Honda Motor Co. Inc., Kawasaki Motors Corp., U.S.A. and Yamaha Motor Corporation, U.S.A.  It is believed by me to be the only such manufacturer's organization in the Nation.

6.    PWIA's purposes include bringing together companies that manufacture personal watercraft in order to promote safe and responsible operation of personal watercraft ("PWC") and work with federal, state and local agencies which have regulatory responsibilities for recreational boating.  This includes maintaining and enhancing continued access to public waters, including appropriate units of the National Park System, for PWC use.

2

7.    PWIA members manufacture personal watercraft and personal watercraft parts and rely on and benefit from sales of their products to users of the National Park System including Gulf Islands National Seashore and Pictured Rocks National Lakeshore.

8.    Any ban on the use of personal watercraft in public waters, including the waters at issue and affected by this lawsuit, adversely affects sales of personal watercraft and parts. First, potential buyers may not purchase a personal watercraft due to decreased opportunities to enjoy the craft. Second, decreased opportunities to use personal watercraft extends the life of currently owned craft reducing the sales of new craft and parts. Third, decreased opportunities for use causes dealers to terminate PWC rentals and further reduces purchases of PWC's and parts.

9.    Because of these interests, PWIA participated in the National Park Service rulemaking that led to the reopening of the Gulf Islands and Pictured Rocks units to limited personal watercraft use. PWIA filed extensive substantive comments supporting the reopening rules and worked to encourage its members to do the same.

10.    PWIA will also be adversely impacted if Plaintiffs succeed in persuading the Court to adopt conclusions regarding PWC technical characteristics that are factually incorrect and misleading. *See* (Cmpt., ¶¶ 20, 21, 22, 23, 14).

11.    As a trade association, PWIA possesses unique information on the technical characteristics of PWCs (emissions, sounds, etc.) This information may be useful to the Court given the technical nature of Plaintiff's allegations.

12.    PWIA members, including manufacturers of Sea-Doo and Yamaha craft and parts, sell PWCs to retail dealers located proximate to Pictured Rocks and adjacent to Gulf Islands' units.

3

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:

7/18/08
Date

Maureen Healey
Executive Director, Personal
Watercraft Industry Association

4

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 2

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-00841-GK |
| ) | |
| DIRK KEMPTHORNE, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | **PERSONAL WATERCRAFT** |
| ) | **INDUSTRY ASSOCIATION'S** |
| PERSONAL WATERCRAFT INDUSTRY ) | **DISCLOSURE STATEMENT** |
| ASSOCIATION ) | **REQUIRED BY LCvR 7.1** |
| 444 North Capitol Street, NW, Suite 645 ) | |
| Washington, D.C. 20001 ) | |
| ) | |
| AMERICAN WATERCRAFT ASSOCIATION ) | |
| 45915 Maris Road, Suite 124 ) | |
| Sterling, VA 20166 ) | |
| ) | |
| CARMEN PERRY, an individual, ) | |
| Perry's Yamaha Center ) | |
| 2010 Telephone Road ) | |
| Pascagoula, MS 39567-3350 ) | |
| ) | |
| RICHARD CHENOWETH, an individual, ) | |
| P.O. Box 2158 ) | |
| Pascagoula, MS 39569-2158 ) | |
| ) | |

MICHAEL SODER, an individual,     )
     Fish and Hunt Shop           )
     W17148 Main Street         )
     Curtis, MI  49820            )
                                 )
WILLIAM MANSON, an individual,   )
     4336 Plainfield Avenue     )
     Suite F                      )
     Grand Rapids, MI  49525    )
                                 )
             Applicant Defendant Intervenors.  )
                                   )

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

I, the undersigned, counsel of record for the Personal Watercraft Industry Association ("PWIA"), certify that the best of my knowledge and belief, the following are parent companies, subsidiaries, or affiliates of PWIA which have any outstanding securities in the hands of the public.

PWIA has no publicly-traded parent companies, subsidiaries, or affiliates.[1]

These representations are made in order that judges of this court may determine the need for recusal.

---

[1]  While some of PWIA's members/sponsors are publicly-traded corporations, the coalition itself has not publicly-traded parent companies, subsidiaries, or affiliates.

DATED:  July 18, 2008

Respectfully submitted,

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
1155 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant*
*Intervenors Personal Watercraft Industry*
*Association, American Watercraft*
*Association, Carmen Perry, Richard*
*Chenoweth, Michael Soder and*
*William Manson*

3

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 3

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-00841-GK |
| ) | |
| DIRK KEMPTHORNE, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | **DECLARATION OF** |
| PERSONAL WATERCRAFT INDUSTRY ) | **CHRISTOPHER L. MANTHOS** |
| ASSOCIATION ) | |
|    444 North Capitol Street, NW, Suite 645 ) | |
|    Washington, D.C.  20001 ) | |
| ) | |
| AMERICAN WATERCRAFT ASSOCIATION ) | |
|    45915 Maris Road, Suite 124 ) | |
|    Sterling, VA  20166 ) | |
| ) | |
| CARMEN PERRY, an individual, ) | |
|    Perry's Yamaha Center ) | |
|    2010 Telephone Road ) | |
|    Pascagoula, MS  39567-3350 ) | |
| ) | |
| RICHARD CHENOWETH, an individual, ) | |
|    P.O. Box 2158 ) | |
|    Pascagoula, MS  39569-2158 ) | |
| ) | |

MICHAEL SODER, an individual,                          )
    Fish and Hunt Shop                                       )
    W17148 Main Street                                      )
    Curtis, MI  49820                                          )
                                                                         )
WILLIAM MANSON, an individual,                      )
    4336 Plainfield Avenue                                 )
    Suite F                                                             )
    Grand Rapids, MI  49525                            )
                                                                         )
    Applicant Defendant Intervenors.                 )
_____ )

## DECLARATION OF CHRISTOPHER L. MANTHOS

I, Christopher L. Manthos, am over age 18 and competent to testify.

1.     I submit this Declaration on behalf of the American Watercraft Association ("AWA").

2.     I have personal knowledge of the statements in the Declaration.

3.     I am a resident of Virginia.

4.     I am the Executive Director of the Applicant Intervenor, AWA

5.     AWA is a national association of personal watercraft users and enthusiasts established in 2004 to provide a strong voice on national issues, including access, for the thousands of individuals across the United States who enjoy recreational use of personal watercraft. It is incorporated in the District of Columbia. It is believed by me to be the only personal watercraft users association in the Nation.

6.     AWA's purposes are to educate personal watercraft users regarding safe and responsible riding, fostering the growth of the sport of personal watercraft riding, and ensure access to public waters, including waters within units of the National Park System, for personal watercraft recreational users.

2

7.     AWA members regularly use personal watercraft in the waters of the Gulf Islands National Seashore and the Pictured Rocks National Lakeshore and intend to do so in the future.

8.     Any ban on or reduction in the use of personal watercraft in public waters, including the waters at issue and affected by this lawsuit, adversely impacts AWA and its members.

9.     To protect these interests, AWA participated in the National Park Service rulemaking that led to the reopening of the Gulf Islands and Pictured Rocks units to regulated personal watercraft use.

10.     AWA and its members will suffer reduced opportunities to participate in personal watercraft riding and  be adversely impacted if Plaintiffs prevail in this case and personal watercraft are banned from the public waters of these two units.

11.     It is important that AWA be granted permission by the Court to participate in this litigation in order to protect its and its members' interests in access to public waters, specifically including the Gulf Islands National Seashore and Pictured Rocks National Lakeshore for recreational use of personal watercraft.

Pursuant to 28 U.S.C. § 1746(l), I declare under penalty of perjury under the laws of the United States of America  that the foregoing is true and correct.

Executed:

7 - 16 - 08
Date

Christopher L. Manthos
Executive Director, American
Watercraft Association

3

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 4

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al., )<br><br>    Plaintiffs, )<br><br>    v. )<br><br>DIRK KEMPTHORNE, et al., )<br><br>    Defendants, )<br><br>    and )<br><br>PERSONAL WATERCRAFT INDUSTRY )<br>    ASSOCIATION )<br>    444 North Capitol Street, NW, Suite 645 )<br>    Washington, D.C. 20001 )<br><br>AMERICAN WATERCRAFT ASSOCIATION )<br>    45915 Maris Road, Suite 124 )<br>    Sterling, VA 20166 )<br><br>CARMEN PERRY, an individual, )<br>    Perry's Yamaha Center )<br>    2010 Telephone Road )<br>    Pascagoula, MS 39567-3350 )<br><br>RICHARD CHENOWETH, an individual, )<br>    P.O. Box 2158 )<br>    Pascagoula, MS 39569-2158 )<br>     ) | Case No. 1:08-cv-00841-GK<br><br><br><br><br><br>**AMERICAN WATERCRAFT<br>ASSOCIATION'S DISCLOSURE<br>STATEMENT REQUIRED BY<br>LCvR 7.1** |

MICHAEL SODER, an individual,                      )
    Fish and Hunt Shop                                    )
    W17148 Main Street                                    )
    Curtis, MI  49820                                        )
                                                    )
WILLIAM MANSON, an individual,              )
    4336 Plainfield Avenue                              )
    Suite F                                                        )
    Grand Rapids, MI  49525                            )
                                                    )
            Applicant Defendant Intervenors.       )

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

I, the undersigned, counsel of record for the American Watercraft Association ("AWA"), certify that the best of my knowledge and belief, the following are parent companies, subsidiaries, or affiliates of AWA which have any outstanding securities in the hands of the public.

AWA has no publicly-traded parent companies, subsidiaries, or affiliates.[1]

These representations are made in order that judges of this court may determine the need for recusal.

---

[1]  While some of AWA's members/sponsors are publicly-traded corporations, the coalition itself has not publicly-traded parent companies, subsidiaries, or affiliates.

DATED:  July 18, 2008

Respectfully submitted,

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
1155 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant
Intervenors Personal Watercraft Industry
Association, American Watercraft
Association, Carmen Perry, Richard
Chenoweth, Michael Soder and
William Manson*

3

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 5

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-00841-GK |
| | ) |
| DIRK KEMPTHORNE, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) **DECLARATION OF** |
| PERSONAL WATERCRAFT INDUSTRY | ) **CARMEN PERRY** |
| ASSOCIATION | ) |
| 444 North Capitol Street, NW, Suite 645 | ) |
| Washington, D.C.  20001 | ) |
| | ) |
| AMERICAN WATERCRAFT ASSOCIATION | ) |
| 45915 Maris Road, Suite 124 | ) |
| Sterling, VA  20166 | ) |
| | ) |
| CARMEN PERRY, an individual, | ) |
| Perry's Yamaha Center | ) |
| 2010 Telephone Road | ) |
| Pascagoula, MS  39567-3350 | ) |
| | ) |
| RICHARD CHENOWETH, an individual, | ) |
| P.O. Box 2158 | ) |
| Pascagoula, MS  39569-2158 | ) |
| | ) |
| MICHAEL SODER, an individual, | ) |

MICHAEL SODER, an individual,           )
    Fish and Hunt Shop                         )
    W17148 Main Street                        )
    Curtis, MI  49820                           )
                                                         )
WILLIAM MANSON, an individual,       )
    4336 Plainfield Avenue                   )
    Suite F                                           )
    Grand Rapids, MI  49525              )
                                                         )
    Applicant Defendant Intervenors.     )
_____ )

### DECLARATION OF CARMEN PERRY

I, Carmen Perry, am over age 18 and competent to testify.

1.     I make this affidavit in support of my application to intervene in this action as a private individual.

2.     I have personal knowledge of the statements in this declaration

3.     I am a resident of Mississippi.

4.     I am the co-owner, with my husband Berton Perry, of Perry's Yamaha Center, 2010 Telephone Road, Pascagoula, MS.

5.     Perry's Yamaha Center sells and services personal watercraft – particularly Yamaha models – many of which are used in the waters of the Gulf Islands National Seashore. Two major islands in the Seashore – Petit Bois and Horn Islands – are immediately offshore from Pascagoula.  We have sold and serviced such craft since 1987.  Virtually all of our recent sales of personal watercraft have been cleaner and quieter 4-stroke models and all future sales are likely to be of only 4-stroke models.

2

6.    Sales and services of personal watercraft fell approximately 50 percent in the period that followed the 2002 ban on personal watercraft within Seashore waters.

7.    Sales and services began to rebound after the Seashore was reopened in 2006 but have not yet returned to the levels that preceded the ban, probably because our community and business also suffered the devastating consequences of Hurricane Katrina in 2005.

8.    Because of our intense personal and business interests in maintaining personal watercraft access to waters of the Gulf Islands National Seashore, I attended and participated in National Park Service meetings and workshops leading up to the 2006 rulemaking re-opening portions of the Seashore waters to personal watercraft.  At those sessions, I strongly urged the agency to take action to assure personal watercraft access.

10.    Any new ban on the use of personal watercraft within the waters of the Gulf Islands Seashore adversely impacts me and my family.  Decreased opportunities to use personal watercraft including within the waters at issue in this case, negatively impacts our sales and services of personal watercraft and a new ban, as sought by Plaintiffs, will likely cause our business to suffer another devastating loss of sales and services.

11.    It is important that I be granted permission by the Court to participate in this litigation in order to protect my interest in access to public waters including those of the Gulf Islands National Seashore for personal watercraft use.

3

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury that the foregoing is true and correct.

Executed:

_____7/16/08_____
Date

_____Carmen Perry_____
Carmen Perry

4

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 6

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BLUEWATER NETWORK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-00841-GK |
| ) | |
| DIRK KEMPTHORNE, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | **DECLARATION OF** |
| PERSONAL WATERCRAFT INDUSTRY ) | **RICHARD CHENOWETH** |
| ASSOCIATION ) | |
|    444 North Capitol Street, NW, Suite 645 ) | |
|    Washington, D.C.  20001 ) | |
| ) | |
| AMERICAN WATERCRAFT ASSOCIATION ) | |
|    45915 Maris Road, Suite 124 ) | |
|    Sterling, VA  20166 ) | |
| ) | |
| CARMEN PERRY, an individual, ) | |
|    Perry's Yamaha Center ) | |
|    2010 Telephone Road ) | |
|    Pascagoula, MS  39567-3350 ) | |
| ) | |
| RICHARD CHENOWETH, an individual, ) | |
|    P.O. Box 2158 ) | |
|    Pascagoula, MS  39569-2158 ) | |
| ) | |

MICHAEL SODER, an individual,                )
    Fish and Hunt Shop                        )
    W17148 Main Street                        )
    Curtis, MI  49820                         )
                                )
WILLIAM MANSON, an individual,               )
    4336 Plainfield Avenue                    )
    Suite F                                   )
    Grand Rapids, MI  49525                   )
                                )
    Applicant Defendant Intervenors.          )
                                )

### DECLARATION OF RICHARD CHENOWETH

I, Richard Chenoweth, am over age 18 and competent to testify.

1.      I submit this Declaration in support of my application to intervene in this action as a private individual.

2.      I have personal knowledge of the statements in this Declaration.

3.      I am a resident of Mississippi.

4.      I have used waters within the Gulf Islands National Seashore for personal watercraft riding in the past.  Since approximately 1989, my family and I have made hundreds of visits via personal watercraft to the Seashore including waters around Petit Bois Island, Horn Island, and Sand Island.  My most recent visit was during the 4th of July weekend.

5.      I was unable to visit the Seashore via PWC after the ban went into effect in April, 2002, as the ban made PWC use illegal.  I am pleased the ban was lifted in May, 2006 and fully intend to and expect to continue to ride my PWC in Seashore waters so long as the ban is not reinstated as a result of this litigation.

6.      Any new ban on the use of PWC's in the waters of the Seashore, as sought by the Plaintiffs in this case, adversely impacts me and my family.  Decreased opportunities to use

2

PWC's within Seashore waters negatively impacts my ability to use and enjoy the Seashore and engage in an activity that I love.

7.    It is important that I be granted permission by the Court to participate in this litigation in order to protect my interest in continued access to the public lands and waters of the Gulf Islands National Seashore for recreational use of PWCs.

Pursuant to 28 U.S.C. § 1746 (1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:

7/15/08
Date

Richard Chenoweth

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 7

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:08-cv-00841-GK |
| DIRK KEMPTHORNE, et al., | ) |
| Defendants, | ) |
| and | ) |
| PERSONAL WATERCRAFT INDUSTRY ASSOCIATION<br>444 North Capitol Street, NW, Suite 645<br>Washington, D.C.  20001 | ) **DECLARATION OF**<br>) **MICHAEL SODER** |
| AMERICAN WATERCRAFT ASSOCIATION<br>45915 Maris Road, Suite 124<br>Sterling, VA  20166 | ) |
| CARMEN PERRY, an individual,<br>Perry's Yamaha Center<br>2010 Telephone Road<br>Pascagoula, MS  39567-3350 | ) |
| RICHARD CHENOWETH, an individual,<br>P.O. Box 2158<br>Pascagoula, MS  39569-2158 | ) |

MICHAEL SODER, an individual,                    )
    Fish and Hunt Shop                           )
    W17148 Main Street                           )
    Curtis, MI  49820                            )
                                                 )
WILLIAM MANSON, an individual,                   )
    4336 Plainfield Avenue                       )
    Suite F                                      )
    Grand Rapids, MI  49525                      )
                                                 )
    Applicant Defendant Intervenors.             )
_____ )

## DECLARATION OF MICHAEL SODER

I, Michael Soder, am over age 18 and competent to testify.

1.    I submit this Declaration in support of my application to intervene in this action as a private individual.

2.    I have personal knowledge of the statements in this declaration.

3.    I am a resident of Michigan.

4.    My family owned small business, the Fish and Hunt Shop, Curtis, MI, has operated for 52 years. Since 1989 our small business has sold and serviced personal watercraft ("PWCs") (primarily Sea-Doo products) for use in area waters including those in Lake Superior within the Pictured Rocks National Lakeshore.  We are located approximately 50 miles from the Seashore.  Before Pictured Rocks was closed to personal watercraft use in 2002, we also rented PWC's that were used by customers in that area.

5.    When Pictured Rocks was closed to PWCs in April, 2002, our business suffered a significant decline in PWC sales, services, and rentals. The decline compelled us to cease PWC rentals.

2

6.      Subsequent to the 2005 reopening of Pictured Rocks pursuant to the National Park Service rulemaking now challenged by the plaintiffs, our PWC business began to rebound and we reinstituted PWC rentals. Virtually all of our PWC sales and rentals are cleaner and quieter 4 stroke models. Approximately half of our PWC customer base is retirees including a very large percentage of women.

7.      If Pictured Rocks is closed again to PWC use, as sought by Plaintiffs in this action, our family business will sustain the same kind of adverse impacts, losses and damages that followed the previous closure. Decreased opportunities to use PWC's within the Lakeshore waters at issue in this case, will negatively impact our PWC sales, services, and rentals.

8.      It is important that I be granted permission by the Court to participate in this litigation in order to protect my interest in continued public access to public waters including those of the Pictured Rocks National Lakeshore for personal watercraft use.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury that the foregoing is true and correct.


Executed:

7/14/2008
Date

Michael Soder

*Bluewater Network, et al. v. Dirk Kempthorne, et al. and Personal Watercraft Industry Association, et al.*, Case No. 1:08-cv-00841-GK

# EXHIBIT 8

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUEWATER NETWORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DIRK KEMPTHORNE, et al.,<br><br>    Defendants,<br><br>    and<br><br>PERSONAL WATERCRAFT INDUSTRY ASSOCIATION<br>    444 North Capitol Street, NW, Suite 645<br>    Washington, D.C. 20001<br><br>AMERICAN WATERCRAFT ASSOCIATION<br>    45915 Maris Road, Suite 124<br>    Sterling, VA 20166<br><br>CARMEN PERRY, an individual,<br>    Perry's Yamaha Center<br>    2010 Telephone Road<br>    Pascagoula, MS 39567-3350<br><br>RICHARD CHENOWETH, an individual,<br>    P.O. Box 2158<br>    Pascagoula, MS 39569-2158 | Case No. 1:08-cv-00841-GK<br><br><br>**DECLARATION OF**<br>**WILLIAM MANSON** |

MICHAEL SODER, an individual,          )
    Fish and Hunt Shop                      )
    W17148 Main Street                     )
    Curtis, MI  49820                      )
                                      )
WILLIAM MANSON, an individual,         )
    4336 Plainfield Avenue                 )
    Suite F                                )
    Grand Rapids, MI  49525                )
                                      )
    Applicant Defendant Intervenors.       )
                                      )

## DECLARATION OF WILLIAM MANSON

I, William Manson, am over age 18 and competent to testify.

1.    I submit this Declaration on in support of my application to intervene in this action as a private individual.

2.    I have personal knowledge of the statements in this declaration.

3.    I am a resident of Michigan.

4.    I have used waters within Pictured Rocks National Lakeshore for personal watercraft riding in the past and intend to do so again in the future.  In the 1990's my family and I made three separate visits to the Lakeshore and rode personal watercraft in its waters on each occasion.

5.    I was unable to visit the Lakeshore to use PWCs after the ban went into effect in April, 2002 because the ban made such use illegal.  I am pleased the ban was lifted in October, 2005 and fully intend to and expect to visit the Lakeshore soon to ride PWCs, so long as the ban is not reinstated as a result of this litigation.

2

6.    Any new ban on the use of personal watercraft in the waters of the Lakeshore, as sought by the Plaintiffs in this case, adversely impacts me and my family. Decreased opportunities to use personal watercraft within Lakeshore waters negatively impacts my ability to enjoy the Lakeshore and engage in an activity that I love.

7.    It is important that I be granted permission by the Court to participate in this litigation in order to protect my interest in access to the public lands and waters of the Pictured Rocks National Lakeshore for recreational use of personal watercraft.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed:

_7-14-08_
Date

_William Manson_
William Manson

G:/101545/2/00003620.DOC

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| BLUEWATER NETWORK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-00841-GK |
| | ) |
| DIRK KEMPTHORNE, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) **ANSWER OF APPLICANT** |
| | ) **DEFENDANT INTERVENORS** |
| PERSONAL WATERCRAFT INDUSTRY | ) **THE PERSONAL WATERCRAFT** |
| ASSOCIATION | ) **INDUSTRY ASSOCIATION,** |
| 444 North Capitol Street, NW, Suite 645 | ) **AMERICAN WATERCRAFT** |
| Washington, D.C.  20001 | ) **ASSOCIATION, CARMEN PERRY,** |
| | ) **RICHARD CHENOWETH,** |
| AMERICAN WATERCRAFT ASSOCIATION | ) **MICHAEL SODER, AND** |
| 45915 Maris Road, Suite 124 | ) **WILLIAM MANSON** |
| Sterling, VA  20166 | ) |
| | ) |
| CARMEN PERRY, an individual, | ) |
| Perry's Yamaha Center | ) |
| 2010 Telephone Road | ) |
| Pascagoula, MS  39567-3350 | ) |
| | ) |
| RICHARD CHENOWETH, an individual, | ) |
| P.O. Box 2158 | ) |
| Pascagoula, MS  39569-2158 | ) |
| | ) |

MICHAEL SODER, an individual,                    )
    Fish and Hunt Shop                           )
    W17148 Main Street                          )
    Curtis, MI  49820                           )
                                                )
WILLIAM MANSON, an individual,                   )
    4336 Plainfield Avenue                      )
    Suite F                                     )
    Grand Rapids, MI  49525                     )
                                                )
    Applicant Defendant Intervenors.            )
_____)

### ANSWER OF APPLICANT DEFENDANT INTERVENORS THE PERSONAL WATERCRAFT INDUSTRY ASSOCIATION, AMERICAN WATERCRAFT ASSOCIATION, CARMEN PERRY, RICHARD CHENOWETH, MICHAEL SODER, AND WILLIAM MANSON

Applicant Defendant Intervenors the Personal Watercraft Industry Association ("PWIA"), American Watercraft Association ("AWA"), and individuals Carmen Perry, Richard Chenoweth, Michael Soder, and William Manson (collectively, "Applicant Intervenors"), by and through counsel hereby submit this Answer to the Complaint for Declaratory and Injunctive Relief filed by Plaintiffs Bluewater Network, Friends of the Earth, The Wilderness Society, and Robert Goodman (collectively, "Plaintiffs") on May 15, 2008.   Unless specifically stated otherwise, the numbered paragraphs in Applicant Intervenors' Answer correspond to the numbered paragraphs in Plaintiff's Complaint.   To the extent an allegation by Plaintiffs is unanswered, Applicant Intervenors deny each such allegation.

1.      Plaintiffs' ¶ 1 contains Plaintiffs' characterization of their claims and legal conclusions, to which no response is required.   To the extent a response is required, Applicant Intervenors deny the allegations in ¶ 1.

2.      Plaintiffs' ¶ 2 contains a legal conclusion regarding jurisdiction to which no response is required.

3.      Applicant Intervenors have insufficient information to either deny or admit the allegations characterizing Plaintiff Bluewater Network in ¶ 3 and therefore deny those allegations except that Applicant Intervenors admit that Bluewater Network is a plaintiff in this case.

4.      Applicant Intervenors have insufficient information to either deny or admit the allegations characterizing Bluewater Network members contained in ¶ 4 and therefore deny those allegations.  The allegations contained in the last sentence of ¶ 4 are specifically denied.

5.      Applicant Intervenors have insufficient information to either deny or admit the allegations characterizing Plaintiff The Wilderness Society in the first three sentences of ¶ 5 and therefore deny those allegations except to admit that The Wilderness Society is a plaintiff in this case.  The allegations in the last sentence of ¶ 5 are specifically denied.

6.      Applicant Intervenors have insufficient information to either admit or deny the allegations in ¶ 6 and therefore deny those allegations.

7.      Applicant Intervenors have insufficient information to either admit or deny the allegations in ¶ 7 and therefore deny those allegations.

8.      Applicant Intervenors admit the allegations in ¶ 8.

9.      Applicant Intervenors admit the allegations in ¶ 9.

10.     The allegations in Plaintiffs' ¶ 10 constitute legal conclusions to which no response is required.  Paragraph 10 also contains characterizations of the 1916 Park Service Organic Act which speak for themselves.

11.     The allegations in Plaintiffs' ¶ 11 constitute legal conclusions to which no response is required.  Paragraph 11 also contains characterizations of National Park Service ("NPS") Management Policies that speak for themselves.

12.    The allegations in Plaintiffs' ¶ 12 constitute legal conclusions to which no response is required.  Paragraph 12 also contains characterizations of the National Environmental Policy Act ("NEPA") which speak for themselves.

13.    The allegations in Plaintiffs' ¶ 13 constitute legal conclusions to which no response is required.  Paragraph 13 also contains characterizations of regulations promulgated by the Council on Environmental Quality ("CEQ") that speak for themselves.

14.    The allegations in Plaintiffs' ¶ 14 constitute legal conclusions to which no response is required.  Paragraph 14 also contains characterizations of regulations promulgated by the Council on Environmental Quality ("CEQ") that speak for themselves.

15.    The allegations in Plaintiffs' ¶ 15 constitute legal conclusions to which no response is required.  Paragraph 15 also contains characterizations of regulations promulgated by the Council on Environmental Quality ("CEQ") that speak for themselves.

16.    The allegations in Plaintiffs' ¶ 16 constitute legal conclusions to which no response is required.  Paragraph 16 also contains characterizations of regulations promulgated by the Council on Environmental Quality ("CEQ") that speak for themselves.

17.    The allegations in Plaintiffs' ¶ 17 constitute legal conclusions to which no response is required.  Paragraph 17 also contains characterizations of regulations promulgated by the Council on Environmental Quality ("CEQ") that speak for themselves.

18.    The allegations in ¶ 18 are admitted in part and denied in part.  Personal watercraft ("PWC") are small watercraft with a variety of attributes that include ease of operation, comfort for riders, safety, reduced air emissions, and reduced sound.  Over 98 percent of current model PWC sales are two or three person "sit-down" designs.  There are many PWC models, some of which are designed for low purchase price and low costs of operation and others

4

for speed and maneuverability. A limited number of models may be able to reach 60 miles per hour, but most are designed to operate at much lower speeds. Most PWC are used for family recreation including sightseeing and access to shoreside restaurants, marinas, docks, other attractions, islands, and sandbars. Some users may engage in the activities depicted in the second sentence of ¶ 18.

19.     The allegations in ¶ 19 are admitted in part and denied in part. The allegations of the first sentence are admitted. Regarding the remainder of ¶ 19, PWC presently account for approximately 10 percent of domestic boat sales, not one-third as alleged by Plaintiffs. The allegation in the first part of sentence three is admitted. However, the most recent statistics indicate that there are approximately 1.1 million PWC within the U.S., not "more than 1.5 million" as alleged by Plaintiffs.

20.     Applicant Intervenors deny the allegations in the first sentence of ¶ 20. PWC use within national park units is carefully regulated by NPS to ensure that significant adverse impacts do not occur. The allegations in the second sentence are also denied.

21.     Applicant Intervenors deny all allegations in ¶ 21. In fact, modern PWC are 70 percent quieter than the 1998 models. Studies in New Jersey and Utah indicate that PWC are quieter than commonly used outboard motorboats.

22.     Applicant Intervenors deny all allegations in ¶ 22. Contrary to Plaintiffs' erroneous allegations, U.S. Coast Guard data show that 26 percent of boating related injuries can be attributed to in some way to PWC use − not 40 percent.

23.     Applicant Intervenors deny all allegations in ¶ 23. Since implementation of stringent Environmental Protection Agency ("EPA") emission standards and California Air Resources Board ("CARB") requirements, PWC exhaust emissions have been reduced 90

5

percent and fuel efficiency improved 30-40 percent. Significant unburned gasoline discharge was a feature of older 2-stroke engines – such as those on virtually all outboard engines since the 1920s and PWC until the late 1990s. In present EPA and CARB compliant PWC models, hydrocarbon emissions, including unburned fuel, are reduced 90 percent. PWC hydrocarbon emissions account for only 0.3 percent of total hydrocarbon source emissions in the U.S. and that amount is decreasing steadily as older PWC are retired.

24.     Applicant Intervenors deny all allegations in ¶ 24.

25.     The allegation in the first sentence of ¶ 25 is admitted. The allegations in the second and third sentences characterize a Proposed Regulation that speaks for itself.

26.     The allegations in ¶ 26 characterize an NPS Final Rule and Federal Register notice that speak for themselves.

27.     The allegations in ¶ 27 characterize an NPS regulation that speaks for itself.

28.     The allegations in ¶ 28 characterize documents that speak for themselves.

29.     The allegations in ¶ 29 characterize NPS documents that speak for themselves.

30.     The allegations in ¶ 30 characterize NPS decisions that speak for themselves.

31.     Applicant Intervenors deny all allegations contained in ¶ 31.

32.     Applicant Intervenors have insufficient knowledge to either admit or deny the first sentence of ¶ 32. The second sentence purports to characterize comments submitted to NPS that speak for themselves.

33.     The allegations in the first sentence of ¶ 33 characterize comments submitted to NPS that speak for themselves. In the second sentence, Applicant Intervenors admit that NPS issued a FONSI and a Final Regulation opening portions of the Gulf Islands to PWC but deny that NPS did not adequately address commenters' concerns.

34.    The first sentence of ¶ 34 characterizes NPS actions that speak for themselves. Applicant Intervenors deny the second sentence.

35.    The allegations in ¶ 35 characterize Plaintiffs' December 2007 letter to NPS, which speaks for itself.  Applicant Intervenors deny the last sentence.

36.    The allegations in ¶ 26 characterize Plaintiffs' December 2007 letter to NPS, which speaks for itself.

37.    Applicant Intervenors admit the allegations in ¶ 27.

38.    Applicant Intervenors deny all allegations and claims in ¶ 38.

39.    Applicant Intervenors deny all allegations and claims in ¶ 39.

40.    Applicant Intervenors deny all allegations and claims in ¶ 40.

41.    Applicant Intervenors deny all allegations and claims in ¶ 41.

42.    Applicant Intervenors deny all allegations and claims in ¶ 42.

43.    Applicant Intervenors deny all allegations and claims in ¶ 43.

44.    Applicant Intervenors deny all allegations and claims in ¶ 44.

45.    Applicant Intervenors deny all allegations and claims in ¶ 45.


## PRAYER FOR RELIEF

No response is required to Plaintiff's prayer for relief in ¶¶ 1, 2, 3, and 4.  To the extent that a response is required, Applicant Intervenors deny that Plaintiffs are entitled to the relief the request.

Dated: July 18, 2008.

Respectfully submitted,

Personal Watercraft Industry Association
American Watercraft Association
Carmen Perry
Richard Chenoweth
Michael Soder
William Manson,

*By their attorney*

_____
William P. Horn (D.C. Bar No. 375666)
James H. Lister (D.C. Bar. No. 447878)
Birch, Horton, Bittner & Cherot
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027
whorn@dc.bhb.com
jlister@dc.bhb.com

8

William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| BLUEWATER NETWORK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00841-GK |
| | ) | |
| DIRK KEMPTHORNE, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | **[PROPOSED] ORDER FOR** |
| | ) | **INTERVENTION** |
| PERSONAL WATERCRAFT INDUSTRY | ) | |
|     ASSOCIATION | ) | |
|     444 North Capitol Street, NW, Suite 645 | ) | |
|     Washington, D.C.  20001 | ) | |
| | ) | |
| AMERICAN WATERCRAFT ASSOCIATION | ) | |
|     45915 Maris Road, Suite 124 | ) | |
|     Sterling, VA  20166 | ) | |
| | ) | |
| CARMEN PERRY, an individual, | ) | |
|     Perry's Yamaha Center | ) | |
|     2010 Telephone Road | ) | |
|     Pascagoula, MS  39567-3350 | ) | |
| | ) | |
| RICHARD CHENOWETH, an individual, | ) | |
|     P.O. Box 2158 | ) | |
|     Pascagoula, MS  39569-2158 | ) | |
| | ) | |

MICHAEL SODER, an individual,   )
  Fish and Hunt Shop     )
  W17148 Main Street     )
  Curtis, MI  49820      )
               )
WILLIAM MANSON, an individual,   )
  4336 Plainfield Avenue     )
  Suite F           )
  Grand Rapids, MI  49525    )
               )
     Applicant Defendant Intervenors. )
_____)


   Upon consideration of Applicant's Motion for Intervention, it is hereby ORDERED that

the motion is granted.



DATED: _____     _____
                   United States District Court