William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
Birch Horton Bittner & Cherot, PC
1155 Connecticut Ave. NW, Suite 1200
Washington, DC  20036
Telephone:  (202) 659-5800
Facsimile:  (202) 659-1027

*Attorneys for Applicant Defendant Intervenors*
*Personal Watercraft Industry Association,*
*American Watercraft Association,*
*Carmen Perry, Richard Chenoweth,*
*Michael Soder and William Manson*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

BLUEWATER NETWORK, et al.,

    Plaintiffs,

v.

DIRK KEMPTHORNE, et al.,

    Defendants,

PERSONAL WATERCRAFT INDUSTRY ASSOCIATION,
AMERICAN WATERCRAFT ASSOCIATION
CARMEN PERRY
RICHARD CHENOWETH,
MICHAEL SODER, and
WILLIAM MANSON,

    Applicant Defendant Intervenors.

Case No. 1:08-cv-00841-GK

### APPLICANT DEFENDANT INTERVENORS' REPLY TO PLAINTIFFS' RESPONSE TO THEIR MOTION TO INTERVENE

Applicant Defendant Intervenors Personal Watercraft Industry Association, American Watercraft Association, Carmen Perry, Richard Chenoweth, Michael Soder and William Manson ("Applicant-Intervenors") submit this reply to Plaintiffs' Response

("Response," Docket 11) to their Motion to Intervene (Docket 8). Plaintiffs unreasonably attempt to limit the intervention to unspecified issues that would be identified at some future date. The Court should grant intervention without the unjustified and dispute-inviting restrictions proposed by Plaintiffs.

Plaintiffs acknowledge that Applicant-Intervenors have standing, and do not contest Applicant-Intervenors' showings regarding the other intervention as-of-right elements, except that they are not sure if the inadequate representation element is met, and speculate that it may not be met as to some, mostly unidentified, issues. Response at 5.[1] Plaintiffs propose in their draft order (Doc. 11-4) that the Court ambiguously grant intervention "to the extent the intervenors' interests are not adequately represented by the government." They suggest that, after each summary judgment filing by the Federal Defendants, an inquiry be made into the issues in that specific Federal brief on which there was inadequate representation. Response at 6.

Plaintiffs' proposal is not supported by Rule 24, the caselaw applying it, or the facts and circumstances of this case. Rather than requiring a showing that the original defendant "will not" adequately represent Applicant-Intervenors or "has not" adequately represented Applicant-Intervenors, Rule 24 only requires a "minimal" showing that there ***"may be inadequate"*** representation during the future course of the case. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538, n.10 (1972) (emphasis added). Thus intervention is granted if a risk of inadequate representation exists, whether or not the risk ultimately comes to pass. This

---

[1] Applicant-Intervenors' standing to participate in this lawsuit is at least as strong and probably stronger than Plaintiffs' own standing. The Applicant-Intervenors are individuals who now ride PWCs in Gulf Islands and Pictured Rocks, businesses who sell PWCs to be used in those units, and their national associations. In seeking to ban use of PWCs in those units, Plaintiffs assert the interests of members who
(Footnote Continued)

2

*forward-looking* assessment of risk enables and contemplates a final decision regarding intervention as early as possible in the case. It does not contemplate the ongoing inquiry envisioned by Plaintiffs into the contents of particular briefs after they are submitted by the original defendant, in order to determine specific issues on which representation "has been" inadequate. By postponing the ultimate decision on intervention, such an inquiry would also create uncertainty that invites future disputes and delays. [2]

      The published cases do not favor complicated efforts to restrict the scope of intervention-as-of-right. *See District of Columbia v. Merit Systems Protection Board,* 762 F.2d 129, 132, (D.C. Cir. 1985)("Intervenors under Rule 24(a)(2) assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted."); *Wilderness Society v. Babbitt,* 104 F.Supp.2d 10, 18 (D.D.C. 2000)(agreeing in NEPA case "that the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all aspects of this litigation . . . without limitation."); *Animal Protection Institute v. Merriam,* 242 F.R.D. 524, 529 (D. Minn. 2006) (refusing to limit intervenor participation to specific issues); *Animal Protection Institute v. Martin*, 241 F.R.D. 66, 71 (D. Maine. 2007) (same).

      The risk of inadequate representation extends to the whole case and not specific issues. Only a few years ago the Park Service that Plaintiffs contends adequately represents Applicant-Intervenors affirmatively banned personal watercraft ("PWC") use in the Gulf Islands unit, and

---

do not recreate in those two units but say they would if there is a ban.

[2] Plaintiffs propose that Applicant-Intervenors' counsel sift through each Federal brief to determine in the first instance, apparently subject to Court review, the issues on which briefing by the Applicant-Intervenors is permissible. This distraction would diminish the ability of Applicant-Intervenors to submit timely and helpful briefs. Additionally, under any reasonable schedule Applicant-Intervenors will have to begin the drafting process before they see the filed Federal brief. Consequently, Plaintiffs' proposal is wasteful of Applicant-Intervenors' resources as well as impractical.

allowed a ban in the Pictured Rocks unit to go into effect by taking no action.  *See* Response at 4.  Because the Park Service represents the broader interests of all segments of the public, and not just the narrower interests of Applicant-Intervenors, the government may reverse course again, or attempt to settle the case in a manner adverse to Applicant-Intervenors.  *Animal Protection Institute,* 242 F.R.D.  at  529 ("the [governmental] Defendant is under no obligation to refrain from agreeing to a settlement, or to the imposition of injunctive relief, that would satisfy the [Plaintiffs] but would severely prejudice the interests of the [applicant-intervenor] Association's Membership."); *see Mille Lacs Band of Chippewa Indians v. Minnesota,* 989 F.2d 994, 1000 (8th Cir.1993).   The whole case concerns whether the Federal Defendants adequately considered the potential environmental impact of PWCs before authorizing their use, a core issue on which Applicant-Intervenors do not expect to mirror the position of the Federal Defendants.  For example, in their final rules, the Federal Defendants, in order to be "conservative," hyper-cautiously chose to rely on older data from 1996 and 1997 submitted in part by Plaintiffs regarding the impact of PWCs, when the "more recent" data in the administrative record shows that the newer model PWCs of today are substantially cleaner (i.e. have less emissions) than the ones studied at the time the old data was prepared.  *Gulf Island National Seashore, Personal Watercraft Use,* 71 Fed.Reg. 26232, 26236 (May 4, 2006).  Applicant-Intervenors will brief the impact of the newer data, which supports the agency action under judicial review here, but which the Federal Defendants are unlikely to stress.

    Even if inadequate representation could somehow be decided issue-by-issue, the claims Plaintiffs present in their complaint are highly overlapping, making it impractical to build the "Chinese walls" between issues that Plaintiffs envision.   For example, in their one stab at specificity, Plaintiffs forecast that the Federal Defendants "should" adequately represent

4

Applicant-Intervenors with regard to Claim Three of the Complaint. Response at 6. But there is hardly any difference between Claim Three and the rest of the Complaint. Claim Two and Claim Three both assert that the Park Service authorized PWC use in Gulf Islands and Pictured Rocks without adequate consideration of environmental consequences, and both allege this violated Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. The only difference is that Claim Two says this alleged inadequate consideration violated the National Environmental Protection Act (NEPA, 42 U.S.C. § 4332) and the APA, while Claim Three says it violated the provisions in the 2001 settlement requiring compliance with NEPA and the APA:

| Claim Two (Complaint, ¶ 42) | Claim Three (Complaint, ¶ 44) |
|---|---|
| "By failing to consider the environmental impacts of its proposed action in reintroducing jetskis into Gulf Islands and Pictured Rocks, or adequately to consider reasonable alternatives, the Park Service is violating NEPA, 42 U.S.C. § 4332, and is acting in a manner that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' and 'without observance of procedure required by law,' in violation of the APA. 5 U.S.C. § 706." | "By reintroducing Jetskis into Gulf Islands and Pictured Rocks without considering 'the impact of [Jetski] use in the particular unit,' including 'impacts on water quality, air quality, soundscapes, wildlife, wildlife habitat, shoreline vegetation, and visitor conflicts and safety,' Exhibit 1 at 2 (¶ 5), the Park Service is violating the 2001 Settlement Agreement, and acting in a manner that is 'arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law' in violation of the APA. 5 U.S.C. § 706." |

Claim One also overlaps with Claim Three. It likewise alleges the Park Service did not adequately consider environmental consequences of PWC use. Complaint, ¶ 38. The only difference is that this inadequate consideration is said to violate the Park Service Organic Act and the APA, as opposed to NEPA (or the NEPA provisions in the 2001 settlement) and the APA.

Because evidence of adequate consideration of environmental consequences tends to defeat all three claims, the three claims are clearly overlapping. It would be both impractical to

5

build Chinese walls between issues and a waste of judicial resources to try to enforce such walls.

In trying to persuade the Court to view Claim Three as an action to enforce the 2001 settlement agreement which Intervenors were not allowed to challenge, Plaintiffs exaggerate that settlement's very limited role here. Because the settlement simply directs compliance with NEPA, it is of limited relevance now. Whether the challenged authorizations of PWC use are upheld turns on applying the law of NEPA and the Park Service Organic Act, not construing the provisions of the old settlement. Paragraph 9 of the settlement plainly specifies that "nothing in this agreement may be construed to otherwise limit or modify the discretion accorded to the defendants [i.e., NPS] by the statutes they administer [e.g., NEPA] or by general principles of administrative law .…" Para. 5 of the settlement specifies any NPS "Special Regulation" to open a unit to regulated PWC use "will be based on appropriate environmental analysis under the National Environmental Policy Act" in that particular unit and further provides that "such analysis will evaluate impacts of PWC use including impacts on water quality, air quality, soundscapes, wildlife, and wildlife habitat, shoreline vegetation, and visitor conflicts and safety." Recognizing that each future special regulation will present a new case, rather than an enforcement matter in the old case, the Settlement itself specifies that a challenge to the lawfulness of special regulation must "be filed as a new lawsuit." Settlement, para. 9.[3] The Park Service opened Gulf Islands and Pictured Rocks to PWC use by special regulation.

---

[3] The Court's 2001 Order denying intervention specifically relies on the lack of any substantive terms in the settlement that could prejudice Applicant-Intervenors in finding that the Applicant-Intervenors' rights were fully preserved without need for them to challenge the settlement. After finding that the settlement called for a NEPA process in which Applicant-Intervenors could fully participate, the Court concluded that "those who fully preserve their legal rights cannot challenge an order approving a settlement agreement resolving the legal rights of others" *Bluewater Network v. Stanton,* Case No. 00-2093-GK at 5 (quoting *Mayfield v. Barr,* 985 F.2d 1090, 1093 (D.C. Cir. 1993)). Accordingly, Plaintiffs' curious argument that paragraph 5 of the settlement imposes substantive duties on NPS that go beyond what NEPA would otherwise require runs counter to the Court's 2001 order.

6

This case is part of a wave of challenges to decisions by the Park Service to allow limited highly-regulated use of recreational motor vehicles in Parks, consistent with the Park's statutory mandate to both preserve the parks and provide for public "enjoyment" of them.  16 U.S.C. § 1. In the other cases in this District that are part of this wave, specifically the snowmobile and all-terrain-vehicle cases, the users and manufacturers have been granted intervention without any severe limitations such as those proposed by Plaintiffs.[4]  Like the present case, Plaintiffs' claims in these other cases have been based on APA, NEPA, and the Park Service Organic Act among others.

The undersigned counsel for Applicant-Intervenors also know that it is good advocacy to avoid repetition of the Federal Defendants' briefs, and represent that they will do so here.

## **CONCLUSION**

For the foregoing reasons and those stated in Applicant-Intervenors' opening memorandum, the Court should grant the Motion to Intervene without the restrictions proposed by Plaintiffs.  A proposed order (Doc. 8-12) accompanies that Motion.

---

[4]     In 2002/2003 and 2007, environmental interests sued NPS to bar snowmobiles from the Yellowstone National Park road system.  The 2002/2003 case arose in part from a 1997 settlement in which NPS agreed to prepare a Winter Use Management regulation and environmental impact statement before authorizing continued regulated snowmobile use in Yellowstone.  Intervention was allowed without restrictions in that case.  Order at 5-6, *Fund for Animals v. Norton,* Civil Action Nos. 02-2367-EGS, 03-762-EGS (D.D.C. Sept. 15, 2003).  User and manufacturers were permitted to intervene as defendants in the 2008 follow-up case as well, although they were denied intervention as cross-plaintiffs as they already had similar pending cross-claims in a parallel case in another district.  Order, *Greater Yellowstone Coalition v. Kempthorne,* Civil Action No. 07-2111-EGS, 07-2112-EGS, 2008 WL 1862298 (D.D.C., April 24, 2008).  In 2005, other environmental interests sued NPS to bar off road vehicle use in selected park system units.  Off road vehicle manufacturers and users were granted intervention without limitation.  Order, *Friends of the Earth v. U.S. Department of Interior,* 05-2302-RCL (D.D.C. Feb. 1, 2006).

DATED:  August 11, 2008

Respectfully submitted,

/s/ William P. Horn
William P. Horn (DC Bar No. 375666)
James H. Lister (DC Bar No. 447878)
1155 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027

*Attorneys for Applicant Defendant Intervenors Personal Watercraft Industry Association, American Watercraft Association, Carmen Perry, Richard Chenoweth, Michael Soder and William Manson*

g:\101545\2\00004328.doc